## KELLY FURNITURE CO. v. WASHINGTON RY. & ELECTRIC CO.

### No. 6330.

United States Court of Appeals for the District of Columbia.

Argued Feb. 7, 1935.

Decided March 11, 1935.

986

Sefton Darr and James O'D. Moran, both of Washington, D. C., for appellant.

Edmund L. Jones, S. R. Bowen, and H. W. Kelly, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

J. Aubrey Muir was an employee of appellant. In 1931 he was injured as the result of a collision between a street car and a motorcycle on which he was riding. He elected to accept compensation under the provisions of the District of Columbia Compensation Act and received, in addition to hospital and medical expenses, approximately $3,700. Thereafter appellant (employer—for reimbursement, etc.) instituted this action at law to recover against appellee street railway company, on the ground that the injury to Muir resulted from the negligent operation of the street car. At the close of plaintiff's case, defendant (appellee) moved for a directed verdict on the grounds, first, that there was no evidence showing negligence on the part of defendant, and second, that the testimony showed Muir to be guilty of contributory negligence as a matter of law. The motion was granted and judgment entered for defendant (appellee), and this appeal taken.

The collision of the motorcycle with the street car was at the intersection of Twenty-Ninth and P Streets N. W., in that part of Washington known as Georgetown. It happened in the daytime in a residential district, when weather conditions were good, and the movement of traffic normal. Muir, for some five years prior to the accident, had been driving a motorcycle in the collection of bills due appellant. He was engaged in this service at the time of the injury and was familiar with the location in question. P street runs east and west; Twenty-Ninth street north and south. Both P street and Twenty-Ninth street, from curb to curb, are each about 30 feet in width. Appellee operates a single-track car line running from east to west on P street. All other traffic moves in the same direction.

Just before the collision, Muir was driving the motorcycle north on Twenty-Ninth street, between the middle of the street and the east curb, at a speed of 18 to 22 miles an hour. As he approached the intersection, and when he was 20 to 25 feet away, he looked to the right to see if there was any traffic approaching. He saw the street car some three car lengths from the intersection. It was considerably farther away than he was, and he thought he had sufficient advantage of distance to get across safely. He therefore continued over the intersection at the same speed until he was within two feet of the southern rail, when he again looked to the right and saw that the street car had approached to a point distant only about one car length from the eastern intersection. He then concluded he could not cross the track ahead of the car and attempted to throw the motorcycle off the track, and while making this maneuver he was struck on the leg by the front end of the car. At the moment of impact he was about in the center of Twenty-Ninth street, and the street car pushed him and the motorcycle approximately five or six feet before it came to a stop.

Muir testified on direct examination that he could not estimate the speed of the car when he first saw it, but on redirect exam-

ination testified it was running from 25 to 28 miles an hour. When he looked up the second time he saw the street car so close that a collision was inevitable. There were no other eyewitnesses to the accident.

As the action is founded on negligence, the burden was on the plaintiff to establish by a preponderance of evidence that the defendant was guilty of the specific act of negligence charged in the declaration. The negligence charged—and pressed—was that the street car company carelessly and negligently failed to bring the car to a stop when it saw, or by the exercise of reasonable care and prudence could have seen, that Muir was in a position of peril. This is the doctrine of last clear chance, and the established rule in such case is, if the defendant, in the exercise of reasonable care and prudence, could have avoided the injury, the contributory negligence of the party injured will not defeat his action.

In these circumstances, we must have recourse to the evidence to determine whether, if we accept Muir's testimony, together with all proper inferences deducible from it, it is sufficient to support a verdict,— "When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither." Ewing v. Goode (C. C.) 78 F. 442, 444. In this jurisdiction, and indeed in the federal courts generally, the rule is that the trial court should direct a verdict for defendant where the evidence and all the inferences which justifiably can be drawn from it will not constitute a sufficient basis for a verdict for plaintiff. Muir, as we have seen, testified that as he approached the street intersection traveling at the rate of 18 to 22 miles an hour, and when approximately 35 feet from the car track, he looked and saw the approaching car three lengths distant from the intersection; in other words, approximately 120 feet from the Twenty-Ninth street southern curb line extended. Stated otherwise, approximately 135 feet from the point of impact. If, as Muir testified, the street car was then operated at a speed of 25 to 28 miles per hour, it would have required approximately three and a half seconds to reach the point of collision, whereas it would have taken Muir, traveling 18 to 22 miles an hour, less than a second and a half to clear the track. Even if the street car had been operated at 30 miles an hour and Muir's motorcycle at only 18, the street car would still have been more than one and a half lengths distant from the middle of the intersection when Muir had cleared it and got safely on the other side. It is therefore obvious that Muir's testimony as to the distance the car was from the intersection when first he saw it, or else his estimate of the rate it was traveling, was incorrect. And when it is considered that the car was brought to a full stop within five feet of the point of collision, it is clear Muir's error was in relation to the former, rather than the latter, alternative. He says he had an unobstructed view of the street car approaching from his right. But he says, "I didn't set my eyes permanently placed on it to see how it was being operated or anything of that sort." If he saw the approaching car so close at hand as to make the passing dangerous, he took the risk of injury in passing it ahead. If he saw it imperfectly and then, without again looking, continued heedlessly on, he likewise took the risk. In either case he was guilty of negligence, for, by his own statement, he could have stopped in a distance of three to five feet.

We have said recently that at street crossings a street car has a preferential right of way. Washington Ry. v. Chapman, 62 App. D. C. 140, 65 F.(2d) 486. The rule is nearly universal and grows out of the very necessities of the situation. It is impossible to turn a street car to the one side or the other, and its weight and the power required to operate it make it more difficult to stop or control than an ordinary vehicle. In view of this, we have held that it is the duty of a pedestrian or a traveler in an automobile on or near the street car track to exercise reasonable care, as the street car approaches, to get off or keep off the track until it passes; and the reason for this, in turn, is the greater ease and facility of pedestrians, or travelers by vehicle, in stopping or changing their course. The rule is, however, at all times subject to a showing of the exercise of reasonable care on the part of the motorman in charge of the car to avoid an accident. He must give reasonable notice of the approach of the car, and likewise must control its movement so as, in the exercise of reasonable care, to avoid running into a person who may inadvertently get in its way. But that is not this case.

Here there was no real evidence that the street car was operated at an unreasonable speed or that it failed to give warning of its approach. The testimony of Muir, that the car ran only five feet after the ac-

cident, indicates it was not running at immoderate speed; and here, whether warning of the approach was given by ringing the gong is of no consequence since, admittedly, Muir saw the car in ample time either by stopping or turning to avoid the accident. In these circumstances the street car company was entitled to binding instructions, unless it appears from the evidence that the operator of the car could, in the exercise of due care, have avoided the consequences of Muir's negligence. As to this we need only point out that if the street car was 135 to 140 feet away when Muir came within the vision of the motorman, and if Muir, driving from 18 to 22 miles an hour, was then only 35 or 40 feet from the far side of the track, the motorman, in the exercise of due care, would have had no reason to anticipate a collision. If, on the other hand, the street car was so much closer to the crossing than Muir placed it that it was obvious Muir could not pass in front of the car in safety, the motorman, having a preferential right of way, was justified in assuming that Muir would stop or turn before reaching the track; so that, in either case, there was nothing to put the motorman on notice of Muir's peril until too late to avoid the collision, for there is no evidence that, after he saw, or should have seen, that a collision was inevitable, he failed to do anything which, in the exercise of reasonable care, he should have done to avoid it.

Affirmed.